**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LUIS COLON,

                Petitioner,

   - v -                                    No. 06-CV-679
                                                  (DRH)

T. R. CRAIG,

                Respondent.

**APPEARANCES:**                                  **OF COUNSEL:**

LUIS COLON
Petitioner Pro Se
53723-066
Federal Correctional Institution
Post Office Box 9005
Ray Brook, New York 12977

HON. GLENN T. SUDDABY                  CHARLES E. ROBERTS, ESQ.
United States Attorney for the                Assistant United States Attorney
   Northern District of New York
Attorney for Respondent
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER

      Pro se petitioner Luis Colon ("Colon"), an inmate in the custody of the Federal Bureau of Prisons (BOP), brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that BOP arbitrarily denied him participation in the Residential Drug Abuse Program (RDAP) in violation of 18 U.S.C. § 3621(e)(2)(B).  Pet. (Dkt. No. 1) at ¶ 7. For the reasons which follow, the petition is denied.

## I. Background

Colon pleaded guilty, in the United States District Court for the Eastern District of Pennsylvania to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Straight Decl. (Dkt. No. 7) at Ex. 2a; Horikawa Decl. (Dkt. No. 7) at Ex. 1a. On October 2, 2001, Colon was sentenced to 120 months to be followed by an eight-year term of supervised release. Straight Decl. at Ex. 2a. Additionally, after reviewing the Presentence Investigation Report ("PSR"), the court recommended that Colon participate in the BOP's inmate drug program. *Id.* The PSR stated that:

> Mr. Colon describes himself as a social drinker; he stated that alcohol has never been a problem in his life. He reported that he smoked marihuana once at 17 and again at 19 but never took a liking to this drug. He stated that he used cocaine intermittently between 1986 and 1991 and crack cocaine occasionally between 1991 and 1998. He does not feel he has ever been addicted to any of these drugs.

*Id.* at ¶ 3.

On November 28, 2001, Colon was taken to the Federal Correctional Institute ("FCI") in Fairton, New Jersey. Horikawa Decl. at Ex. 1a. On December 6, 2001, and on March 1, 2004, during Psychology Services Intake Screenings at FCI Fairton, Colon denied having a history of substance abuse. Straight Decl. at Exs. 2b & 2c. On July 26, 2005, Colon was transferred to the Federal Medical Center ("FMC") in Devens, Massachusetts. Horikawa Decl. at Ex. 1a. On August 2, 2005, while at FMC Devens, Colon underwent a third screening. Straight Decl. at Ex. 2d. However, on this occasion he reported having a history of substance abuse, primarily with cocaine. *Id.*

On August 10, 2005, Colon met with a drug abuse treatment coordinator who administered an RDAP eligibility interview. Bates Decl. (Dkt. No. 7) at Ex. 3a. Colon

claimed that from November 17, 1998 until November 17, 1999, he used marijuana, cocaine, and alcohol.  *Id.*  A diagnosis of cocaine dependence and alcohol abuse was rendered.  *Id.*  However, on August 31, 2005, the coordinator found that Colon was not qualified for the RDAP due to a lack of supporting evidence that Colon used drugs during the time period claimed and because of the inconsistencies in his previous screenings.  Straight Decl. at Ex. 2e.  It was also noted that in the PSR, Colon had stated that he did not have an alcohol problem and that he was never addicted to drugs.  *Id.*  Entrance into the program was denied, but Colon was informed of drug education and other drug treatment programs.  *Id.*

Thereafter, Colon administratively appealed the decision and exhausted his administrative remedies.  Horikawa Decl. at Ex. 1b.  In denying Colon's appeal, the Warden noted that pursuant to BOP Program Statement 5330.10, an inmate must meet several eligibility criteria to enter the RDAP, including a "verifiable documented drug abuse problem."  *Id.*  Colon's history of substance abuse was to be examined for the twelve months prior to incarceration and verified in the PSR or equivalent records.  *Id.*  Furthermore, the inmate must meet the diagnostic criteria for substance abuse or dependence as indicated in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition ("DSM-IV").  *Id.*  The Warden stated that even though a diagnosis was rendered, there was no information or records for the twelve months prior to Colon's incarceration, November 17, 1998 through November 17, 1999, to substantiate the claims made in the PSR as well as during the interviews apart from the self-reports.[1]  *Id.*  Thus,

---

[1] Colon was provided an opportunity to present outside information to substantiate his substance abuse claims but did not do so.  Horikawa Decl. at Ex. 1b.

Colon was deemed ineligible for the RDAP, although he did qualify for drug education programs as well as the non-residential drug abuse program. *Id.*

On March 18, 2006, Colon was transferred to FCI Ray Brook. Horikawa Decl. at Ex. 1a. On April 19, 2006, Colon underwent a fourth screening where he again stated that he had a history of substance abuse. Straight Decl. at Ex. 2f. On July 11, 2006, Colon entered the non-residential drug treatment program. Horikawa Decl. at Ex. 1c. This action followed.

## II.  Discussion

Colon claims that the BOP arbitrarily denied him participation in the RDAP since there is no requirement in any written BOP policy or the DSM-IV that the documented substance abuse must have occurred within the twelve months preceding incarceration. *See* Pet.

In evaluating a petitioner's challenge to an agency's decision based on a statute or regulation, the Supreme Court has established a two-step framework for a review of an "agency's construction of the statute which it administers[.]" *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *see also Chauffeur's Training Sch., Inc. v. Spellings*, 478 F.3d 117, 124-25 (2d Cir. 2007) (citing *Chevron*). Under the first step of the framework, courts must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43; *see also Dole v. United Steel Workers*, 494 U.S.

26, 35 (1990) (stating that "[o]n a pure question of statutory construction, our first job is to try to determine congressional intent, using traditional tools of statutory construction" (internal quotation marks and citation omitted)); *Verizon New York, Inc. v. Covad Commc'ns Co.*, No. 1:04-CV-265 (GLS/DRH), 2006 WL 278281, at *5 (N.D.N.Y. Feb. 3, 2006) (citing *Chevron*).

If the intent of Congress is not clear, a court must then move to the second step of the analysis. As stated by the Supreme Court,

> [i]f . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 843; *see also Chauffeur's Training Sch., Inc.*, 478 F.3d at 125; *Verizon New York, Inc.*, 2006 WL 278281, at *5 (citing *Chevron*). Deference will be given to an agency's interpretation of the statute so long as "(1) the agency is charged with implementing the statutory scheme, and (2) its interpretation is reasonable." *Chauffeur's Training Sch., Inc.*, 478 F.3d at 125 (citing *Envtl. Def. v. United States Envtl. Prot. Agency*, 369 F.3d 193, 200 (2d Cir. 2004)); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005); *Chevron*, 467 U.S. at 843-44 (stating that "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").

In this case, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Pub. L. No. 103-322, which amended, in part, 18 U.S.C. § 3621. Pursuant to 18 U.S.C. § 3621, the BOP shall allow "every prisoner with a substance abuse problem . . . the opportunity to participate in appropriate substance abuse treatment," subject to their eligibility.  18 U.S.C. § 3621(e).  An inmate may be eligible for a substance abuse treatment program, such as the RDAP, if the BOP determines that the inmate has a substance abuse problem and the inmate is "willing to participate in a residential substance abuse treatment program[.]" *Id.* at § 3621(e)(5)(B).[2]  Based on the construction of this statute as it relates to drug treatment programs, the first step of the framework under *Chevron* is inapplicable.  It is clear that Congress left the question of eligibility solely within the discretion of the BOP.  *See id.* at § 3621(e)(5)(B)(I); *Goren v. Apker*, No. 05 Civ. 9006(PKC), 2006 WL 1062904, at *5 (S.D.N.Y. Apr. 20, 2006) (noting that "[t]here is no other language in the statute addressing the eligibility of prisoners for participation in RDAP, thus suggesting that Congress has granted BOP broad discretion in administering RDAP") (citing *Lopez v. Davis*, 531 U.S. 230 (2001))).

Thus, the Court must now determine, under the second step, whether the BOP's interpretation of the statute is reasonable in order to give deference to its decision regarding Colon.  Under BOP regulations, in order for an inmate to be eligible for RDAP, he must meet all of the following requirements:

> (1) [t]he inmate must have a verifiable documented drug abuse problem[;] (2) [t]he inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program[;] (3)

---

[2] An incentive for the successful completion of the RDAP is a possible reduction of an inmate's sentence of up to one year.  *See* 18 U.S.C. § 3621(e)(2)(B).

> [t]he inmate must sign an agreement acknowledging his/her program responsibility[;] (4) [o]rdinarily, the inmate must be within thirty-six months of release[;] and] (5) [t]he security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56(a). The decision to place an inmate into the RDAP is made by the drug abuse treatment coordinator. *Id.* at § 550.56(b).

In applying this regulation, the BOP's Program Statement 5333.10 provides additional guidance by which an inmate's eligibility will be determined. Horikawa Decl. at Ex. 1d. In specific reference to the first requirement under the regulation, that an inmate must have a verifiable documented drug abuse problem, Program Statement 5333.10 § 5.4.1 states, in part, that:

> Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of the Medical Disorders, Fourth Edition, (DSM-IV)</u>. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation that indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or independence was made via the interview, shall be accepted as verification of a drug abuse problem.

*Id.* When the staff interviews an inmate under this policy, they must ascertain how often a particular drug was used during a period of twelve consecutive months while the inmate was in community and not incarcerated. *Id.* at Ex. 1e. Furthermore, the DSM-IV requires that three or more manifestations of substance abuse occur within the same twelve month period. *See id.* at Ex. 1f. Additionally, in a memorandum dated October 21, 1996, the National Drug Abuse Coordinator clarified that an inmate will be eligible for the RDAP if the

-7-

interview leads to a diagnostic impression of substance abuse for twelve months prior to arrest and if there is corroborating documentation. *Id.* at Ex. 1g. Instructions on verification remained as described in Program Statement 5333.10 § 5.4.1. *Id.*

The Supreme Court has stated that deference is given to the BOP even when "the Bureau's interpretation [of a statute] appears only in a Program Statemen[t]-an internal guideline-rather than in published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment." *Reno v. Koray,* 515 U.S. 50, 61 (1995) (internal quotation marks and citation omitted) (alterations in original). The Supreme Court reasoned that the BOP's Program Statement, which constitutes "an internal agency guideline , . . . is akin to an interpretive rule that do[es] not require notice and comment , . . . [and thus,] is . . . entitled to some deference . . ., since it is a permissible construction of the statute." *Id.* (internal quotation marks and citations omitted).

Notwithstanding, the question of whether the BOP's interpretation of this statute is reasonable, and therefore should be given deference, is split among the circuits. In cases that are factually analogous to this, courts have found that the standards set by the BOP for eligibility are a permissible and reasonable exercise of the BOP's statutory discretion. *See Dellarcirprete v. Gutierrez*, 479 F. Supp. 2d 600, 604-06 (N.D. W.Va. 2007); *Rea v. Sniezek*, No. 4:06 CV 2424, 2007 WL 427038, at *4-5 (N.D. Ohio Feb. 2, 2007); *Shew v. FCI Beckley*, No. 5:05-0814, 2006 WL 3456691, at *4 (S.D. W.Va. Sept. 19, 2006); *Montilla v. Nash*, No. CIV A 05-2474(FLW), 2006 WL 1806414, at *3 (D.N.J. June 28, 2006); *Batiste v. Menifee*, No. CIV A 06-0657, 2006 WL 2078186, at *5 (W.D. La. June 16, 2006); *Conrod v. Sanders*, No. 2:05-CV-1915, 2006 WL 1789554, at *3 (W.D. La. May 16, 2006); *Quintana*

*v. Bauknecht*, No. 3:05cv359/LAC/EMT, 2006 WL 1174353, at *4 (N.D. Fla. May 2, 2006); *Calhoun v. Warden, F.C.I. Texarkana*, No. 5:05CV198, 2006 WL 887677, at *6 (E.D. Tex.), *aff'd*, 224 Fed.Appx. 333 (5th Cir. 2007); *Laws v. Barron*, 348 F. Supp. 2d 795, 804-06 (E.D. Ky. 2004).  The courts noted that while none of the provisions in the statute, regulation, program statement, or DSM-IV refer to the documentation requirement for the twelve-month period prior to incarceration, it is consistent with the DSM-IV definition.  *See Laws*, 348 F. Supp. 2d at 804; *Dellarcirprete*, 479 F. Supp. 2d at 605-06; *Rea*, 2007 WL 427038, at *5; *Montilla*, 2006 WL 1806414, at *3; *Batiste*, 2006 WL 2078186, at *5; *Quintana*, 2006 WL 1174353, at *4.  Furthermore, the documentation requirement "is necessary to ensure the inmate is not falsely reporting symptoms" because of the rigorous nature of the RDAP, which is meant for those having a more recent history of substance abuse.  *Laws*, 348 F. Supp. 2d at 805-06; *see also Dellarcirprete*, 479 F. Supp. 2d at 605.  Additionally, the same criteria are applied uniformly nationwide to all inmates seeking entry into the RDAP and the requirements set by the BOP are based upon the "Bureau's long experience in running RDAP and other drug programs."  *Laws*, 348 F. Supp. 2d at 805; *see also Rea*, 2007 WL 427038, at *5.  Thus, the courts held that the BOP's interpretation is not arbitrary and neither violates any statutory or constitutional provisions, nor does it conflict with any rule, regulation, or program statement.

Case law within the Second Circuit accords with these cases and have held that the BOP's interpretation of the statute requiring documented verification of the substance abuse as well as the use of the twelve-month period is reasonable.  *See Goren*, 2006 WL 1062904, at *5-8 (stating that "[e]ven if [the] BOP had adopted a policy, practice, or rule

requiring a manifestation of the substance abuse problem within 12 months prior to incarceration and a reference in the PSR, such action would be a permissible exercise of the broad discretion Congress granted to BOP to administer RDAP"); *Bagarozy v. Wiley*, No. 98-CV-1845, 1999 WL 33504439, at *3 n.7 (N.D.N.Y. Oct. 26, 1999) (noting that the BOP has full discretion to determine which inmates enter the drug treatment program and, because there was no documented drug problem, the court lacked the jurisdiction to review the BOP's determination). The court in *Goren* further utilized the same analysis as found in the cases above from the other circuits in arriving at its conclusion. *See* 2006 WL 1062904, at *5-8.

However, three courts have found that the BOP's interpretation of the statute "requiring proof of substance abuse within twelve months of some specific event is an impermissible interpretation of the statute." *Smith v. Vazquez*, No. CV206-275, 2007 WL 1624645, at *2 (S.D. Ga. June 5, 2007); *see also Kuna v. Daniels*, 234 F. Supp. 2d 1168, 1169 (D. Or. 2002); *Mitchell v. Andrews*, 235 F. Supp. 2d 1085, 1090-91 (E.D. Cal. 2001). These courts have held that the BOP's use of such a policy are "unannounced, unwritten, and seemingly inconsistent criteria for RDAP eligibility" and thus "an unreasonable exercise of the BOP's discretion." *Smith*, 2007 WL 1624645, at *3; *Kuna*, 234 F. Supp. 2d at 1169 (finding that the BOP acted arbitrarily); *Mitchell*, 235 F. Supp. 2d at 1090-91 (noting, however, that the petitioner did have documentation for his abuse up to and including the twelve-month period prior to incarceration).

Nevertheless, the majority of the caselaw, including that from courts within the Second Circuit, have upheld the BOP's interpretation. This Court concurs with the

reasoning and holdings in those cases.  Here, Colon could not refer to any pre-incarceration documentation verifying his substance abuse problem, even though he was afford the opportunity to do so.  *See* Horikawa Decl. at Ex. 1b; *Goren*, 2006 WL 1062904, at *8.  Furthermore, Colon has not presented the names of any physicians that treated him for the problem prior to incarceration.  *See Goren*, 2006 WL 1062904, at *8.  The drug abuse treatment coordinator evaluated the information from all four screenings and found that Colon did not qualify for the program due to inconsistencies from the numerous interviews and the PSR.  Straight Decl. at Ex. 2e.  Additionally, Colon was offered the opportunity to participate in drug education programs and a non-residential drug abuse program, of which he partook.  Thus, based on the case law as well as evidence presented in this case, the BOP's decision that Colon was ineligible for admission to the RDAP was not unreasonable, arbitrary, nor an abuse of the BOP's discretion.

Accordingly, the petition is denied.

### III.  Conclusion

For the reasons stated herein, it is hereby

**ORDERED** that the petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED**, that judgment be entered in favor of the Respondent.

Date:  October 18, 2007
       Albany, New York

*David R. Homer*
United States Magistrate Judge